UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

ELSA J. ALONSO-ROTH,

      Plaintiff,

v.

MAGICAL CRUISE COMPANY, LTD, d/b/a DISNEY
CRUISE LINE, BROOKFIELD CORPORATION,
BROOKFIELD PROPERTY PARTNERS, L.P.,
BROOKFIELD HOSPITALITY PROPERTIES, LLC.
XYZ DEFENDANT(S),

      Defendants.

_____/

## COMPLAINT FOR DAMAGES AND JURY DEMAND

      Plaintiff, ELSA J. ALONSO-ROTH (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, and alleges:

### PRELIMINARY ALLEGATIONS

      1.    Plaintiff, ELSA J. ALONSO ROTH is and at all times material hereto was a resident of and domiciled in Winter Garden, Orange County, Florida and is *sui juris*.

      2.    Defendant, Magical Cruise Company, LTD d/b/a Disney Cruise Line ("Disney"), is a subsidiary of The Walt Disney Company and a United Kingdom limited liability company, registered, and authorized to transact business in the State of Florida, with its principal place of business in Celebration, Florida.[1]

_____

[1] Disney is a common carrier engaged in the business of marketing, selling, and operating a cruise line in Florida.

3.      At all times material hereto, Defendant, Brookfield Corporation (BN), f/k/a Brookfield Asset Management, LTD, (BAM), is a Canadian corporation, trading on the NYSE under the stock ticker symbol "BN," with its principal offices at Brookfield Place, 250 Vesey Street, New York, N.Y., 10281-1023,[2] and owns Brookfield Property Partners LP (BPP)} [3] [4] [5]

4.      At all times material hereto, BPP owned and operated Atlantis Paradise Island Resort, a luxury resort located on Paradise Island, Bahamas.[6]

5.      Brookfield Hospitality Properties, LLC ("BHP") is a Delaware corporation and subsidiary of BN, with its principal place of business located in New York, actively doing business in the State of Florida, under the assumed name of "Atlantis Paradise Vacations," with offices at 1000 S Pine Island Rd, Plantation, FL 33324.[7]

6.      The Brookfield entities named herein are collectively referred to as "Brookfield Entities" and/or the "Brookfield Defendants" and include an equity fund named "Brookfield Strategic Real Estate Partners IV," which may have recently acquired an interest in the Atlantis Paradise Island Resort, as well as Defendant, XYZ Defendant(s), which is/are included to represent the owner(s) and/or operator(s) of the Atlantis Paradise Island Resort, insofar as such entity has a

---

[2] BN directly or through its subsidiaries owns and/or operates 840 properties worldwide, including 37 properties in the State of Florida.

[3] Brookfield Corporation completed its privatization of BPP on July 26, 2021, by acquiring all of the limited partnership units of BPP and the exchangeable limited partnership units of Brookfield Office Properties Exchange LP.

[4] As of July 26, 2021, BPP is no longer a publicly traded, but is a wholly owned subsidiary of BN.

[5] BPP has offices in New York, Houston, Los Angeles, and Washington D.C.[2], and owns and manages properties in several states, such as California, Florida, Illinois, Massachusetts, and Texas.

[6] Atlantis Paradise Island Resort is a popular destination for tourists from the United States and other countries, and it advertises and offers its services through its website, social media platforms and travel agencies.

[7] BHP maintains an office in Florida and utilizes "*https://www.atlantisbahamas.com*," as its website address, which directs users to information concerning the Atlantis Paradise Island Resort in Nassau, Bahamas.

different name than the named Defendants herein, or additional entity contributed to the ownership and/or operation of the subject excursion. In the event discovery reveals that a different or additional entity(ies) was(were) involved in the ownership and/or operation of the subject excursion, the legal name(s) of the entity(ies) will be substituted for XYZ Defendant(s).

## ADMIRALTY JURISDICTION

7.    The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333.

8.    Article III of the Constitution grants the Federal Judiciary jurisdiction over admiralty and maritime cases to ensure that courts would apply uniform rules in deciding cases.

9.    At all times material thereto, Disney owned, operated, managed, maintained and/or controlled a cruise ship passenger vessel named the *Disney Wish*, or was the owner *pro hac vice* of the vessel.

10.    At all times material hereto, Disney operated the *Disney Wish* on navigable waters.

11.    At all times material hereto, Plaintiff was a fare paying passenger aboard the *Disney Wish* on a Caribbean cruise which, among other ports, called upon the scheduled Port of Nassau, Bahamas.

12.    Federal admiralty jurisdiction extends to the subject injury incident as the maritime tort giving rise to Plaintiff's injury bears a significant relationship to traditional maritime activity and had the potential of impacting maritime commerce.

13.    Shore side excursions, including the Atlantis Aquaventure (N25), during which the subject injury incident occurred are considered the *sine qua non* or *condicio sine qua non* of the cruise experience and are regularly sold by cruise lines aboard their cruise ships, including by Disney.

14.    It is a settled principle of maritime law that a shipowner owes passengers the duty to exercise reasonable care under the circumstances, whether the paying passenger was injured on

the vessel or in a scheduled port-of-call and an attempt on the part of the carrier to … limit itself to protecting the passenger only while he is on the vessel is repugnant to the essence of the voyage as one of the principal purposes of Caribbean cruise is to go ashore at Caribbean ports.

15.    This case involves a maritime tort, as the type of incident and injuries suffered by Plaintiff had the potential to impact maritime commerce as shore side excursions are a part of the cruise experience and sold by cruise lines aboard their cruise ships.

16.    Further, the Atlantis Aquaventure (N25) is a shore-side excursion offered aboard Disney cruise ships as a "port adventure" on the properties of owned, operated, maintained, and marketed by the "Brookfield Defendants" and said port adventure excursion was selected and approved by Disney as one of their selected and approved port adventure excursions.

<u>**PERSONAL JURISDICTION OVER ALL DEFENDANTS**</u>

a.    <u>**Personal Jurisdiction as to Disney:**</u>

17.    The Court has personal jurisdiction over Disney, as its principal place of business is located within Orange County, Florida, and it conducts substantial business within the State of Florida, marketing, selling and operating cruises to and from ports throughout Florida.[8]

18.    Disney provides cruise vacations to Florida residents, not only offering passenger cruises, but offering shore excursions in Florida, and engaging in contracts for provisioning its five (5) cruise ships, while located in Florida ports, and employs several thousand Floridians at its Orange County, Florida headquarters and on its ships.

19.    Disney operates, conducts, engages in, or carries on a business or business venture in this state sufficient to satisfy a finding of specific jurisdiction under Florida Statute §

---

[8] Disney has an office or agency in this state sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(1).

48.193(1)(a)(1).[9]

20.    Disney owns, uses, or possesses real property within this state sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(3).

21.    Disney entered into a contract that complies with Florida Statute § 685.102 sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

22.    Disney entered into an agreement with the Brookfield Defendants in which Disney agreed to sell to its passengers the Atlantis Aquaventure (N25) port excursions for or on behalf of the Brookfield Defendants, which in exchange agreed to allow Disney passengers to participate in the Atlantis Aquaventure (N25) at the Atlantis Resort, in the Port of Nassau, Bahamas.

**b.    Personal Jurisdiction Over the Brookfield Defendants.**

23.    The Court has personal jurisdiction over the Brookfield Defendants as the Brookfield Entities own and operate 37 properties in the State of Florida and individually and/or collectively with other Brookfield entities conduct substantial business or business venture(s) within the State of Florida pursuant to Florida Statute § 48.193(1)(a).

24.    "Brookfield Properties" is a global commercial real estate company that owns, operates and develops a vast portfolio of assets in various markets, including the United States and has offices in New York, Houston, Los Angeles, and Washington D.C. and owns and manages properties in several states, such as California, Illinois, Massachusetts, Texas, and Florida.

---

[9] The conferral of jurisdiction over the Brookfield Defendants does not violate Constitutional due process, and as such, the Brookfield Defendants and on information and belief, through the provisions of tour operator agreements, have consented to the forum selection clause contained in those agreements between the cruise line and tour provider specifying that disputes concerning the tour agreement or related thereto must be brought in and before any court of competent jurisdiction located in Brevard County, Florida, U.S.A, or the United States District Court, Middle District of Florida, Orlando Division, to the exclusion of courts located in any other county, district, state, country, territory or possession, which when combined with their physical presence (37 properties) in Florida constitute sufficient specific and general personal jurisdiction over the Brookfield Defendants, individually and collectively to maintain personal jurisdiction.

25.     The Court has personal jurisdiction over the Brookfield Defendants individually and/or collectively, as they maintain significant contacts with the State of Florida, that enables BN to generate substantial income in Florida, through the Atlantis Paradise Island Resort and the port adventure packages it sells to cruise ship passengers in Florida.[10]

26.     The Court has personal jurisdiction over the Brookfield Defendants individually and/or collectively as they maintain bank account(s) in Florida; receiving payment for shore excursions in Florida; procure insurance for the shore excursion in Florida; travel to Florida for the purpose of soliciting business; attending business meetings in Florida associated with the provision of shore excursions for multiple Florida based cruise lines, maintaining businesses operations in Florida, and maintaining the selection process for approval of shore excursions in Florida.[11]

27.     The Brookfield Defendants operate, conduct, engage in, or carry on a business or a business venture in this state sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(1).

28.     The Brookfield Entities own, use, or possess, real property within this state sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(3).

29.     The Brookfield Defendants' continuous and systematic general business contacts within the State of Florida, including entering into a contract that complies with Florida Statute § 685.102, are sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9) and § 48.193(2), including targeting the Atlantis Paradise Island Resort to "Florida

---

[10] BN, through BPP maintains an ongoing business relationship with BHP and Disney and other Florida based cruise lines, such as Norwegian Cruise Line, Carnival Cruise Lines, Azamara Cruises, Celebrity Cruise Line, Virgin Cruise Line, and Royal Caribbean Group, and others, by marketing and selling tour excursions and port adventure packages, including the subject "Atlantis Aquaventure (N25)" (or similarly named) excursions, as a port adventures.

[11] Upon information and belief, the Brookfield Defendants or their predecessors entered into a tour operator (or similar) agreement(s) with Disney and other Florida based cruise lines to provide shore excursion port adventures to passengers of these Florida based cruise lines.

Residents" with special offers and discounts.[12]

30.     Upon information and belief, the Brookfield Defendants entered into a contract with Disney concerning the subject shore excursion which, upon information and belief, (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby as tour operator, the Brookfield Defendants agreed to submit to the exclusive jurisdiction of the courts of Florida; and (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that has its principal place of business operating in Florida.

31.     At all times material thereto, the Brookfield Defendants agreed to provide the "Atlantis Aquaventure (N25)" port adventure to Disney passengers other Florida cruise lines, including Norwegian Cruise Line, Carnival Cruise Lines, Azamara Cruises, Celebrity Cruise Line, Virgin Cruise Line, and Royal Caribbean Group, as well other non-Florida based cruise lines operating elsewhere in the United States.

32.     The Court has personal jurisdiction over the Brookfield Defendants individually and/or collectively under Fed. R. Civ. P. 4(k)(2) because all claims alleged in this civil action are governed by the Federal General Maritime Law of the United States and involve substantial questions of federal general maritime law.

33.     The Brookfield Defendants individually and/or collectively have purposefully availed themselves of the privilege of conducting substantial activities and business within the

---

[12] At all times material hereto, the Brookfield Entities engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether the claim arises from that activity, sufficient to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(2).

United States and advertise and promote excursion packages through business relationships entered into in the State of Florida, with Disney, Norwegian Cruise Line, Carnival Cruise Lines, Azamara Cruises, Celebrity Cruise Line, Virgin Cruise Line, and Royal Caribbean Group, and/or contracting to provide cruise excursion services through Disney and BHP's websites targeting Florida residents by extending  "special offers" solely to "Florida Residents," as that described at: *https://www.atlantisbahamas.com/florida-offer-for-residents.* Note "atlantisbahamas.com" is the same domain used by BHP, *infra.*

## FORUM SELECTION CLAUSE AND CHOICE OF LAW

34.    The applicable Disney cruise contract contains a forum selection clause, requiring any personal injury claims to be litigated "in and before any court of competent jurisdiction located in Brevard County, Florida, U.S.A, or the United States District Court, Middle District of Florida, Orlando Division, to the exclusion of courts located in any other county, district, state, country, territory or possession."

35.    The Disney excursion description on its website for the "Atlantis Aquaventure (N25)" provides "[a]ll Port Adventures are subject to the Disney Cruise Line Cruise Contract."

36.    Shore side excursions such as the Atlantis Aquaventure (N25) are the *sine qua non* of the cruise experience and pursuant to the Disney Cruise Line Cruise Contract, the applicable choice of law provision requires that the General Maritime Law of the United States apply substantive admiralty law to this action.

37.    The Himalaya provisions of the Disney Cruise Contract extend the contract terms and conditions to any excursion operators which may operate its excursions, such as the Atlantis Aquaventure (N25).

## FACTS COMMON TO ALL COUNTS

38.    Prior to the cruise, Plaintiff (and her husband Steve Roth) reviewed Disney's website which contain descriptions of the shore excursions Disney offered its cruise passengers and became interested in an excursion titled "Atlantis Aquaventure (N25)."[13]

39.    Disney also has promotional materials at its shore excursion desk aboard the cruise ship and/or other areas of the ship with similar information and descriptions of shore excursions which confirmed the information online, including information on Disney's process for selection of shore excursion operators, its inspection of such excursions, the safety of its passengers aboard the ship and in port, including that the subject excursion was "state of the art."

40.    The Disney website description of the "Atlantis Aquaventure (N25)" port adventure represented "[e]nter the magic of Atlantis' 141-acre treasure: The Aquaventure waterpark. Featuring state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects, Aquaventure is far from your usual water park."

41.    Disney represented that the "Port Adventures — shore excursions that have been specially selected by Disney Cruise Line — (to) provide you and your family with the very best each destination has to offer."

42.    Plaintiff particularly relied on Disney's representation concerning that "[a]t Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port." (*Emphasis added*)

43.    Plaintiff relied upon Disney's representation that the Atlantis Aquaventure was "state

---

[13] https://disneycruise.disney.go.com/port-adventures/nassau-bahamas-atlantis-aquaventure/ (Last visited August 30, 2023).

of the art," as described in its promotional and marketing materials, including the representations made by Disney concerning the port adventure Atlantis Aquaventure (N25) and its representation that Disney upholds the highest standards of safety at all times whether at sea or in port.

44.   Relying on Disney's representations, Plaintiff (and her husband) purchased tickets for the subject port adventure excursion directly from Disney.

45.   Disney provided the Plaintiff with the excursion tickets and materials while the Plaintiff was aboard the *Disney Wish* during the subject voyage.

46.   On the date of the excursion, Disney participated in manning the groups of Disney passengers participating in the port adventure, manning the groups of attendees, meeting them at a location within the ship, and escorting them to the cruise pier, then to the parking lot and on a bus to take them to the "Atlantis Aquaventure (N25)" port excursion located the Atlantis Resort on Paradise Island.

47.   Disney and the Brookfield Defendants each received a portion of the Plaintiff's ticket price for the subject excursion.

48.   Plaintiff relied on the representations of Disney and believed that the "Port Adventures — shore excursions that have been specially selected by Disney Cruise Line — (to) provide you and your family with the very best each destination has to offer" and that the Atlantis Aquaventure amenities were "state of the art."

**THE SUBJECT INCIDENT**

49.   On October 5, 2022, as part of Plaintiff's cruise aboard the *Disney Wish*, upon arrival in Nassau, Bahamas, the Plaintiff participated in the subject excursion.

50.   Members of Disney's crew participated in guiding the participants from inside the cruise ship to the cruise pier and to a parking lot where air-conditioned buses transported the

participants to the Atlantis Paradise Island Resort.

51.    Upon arrival at the Atlantis Resort, the participants were checked in by Atlantis Resort personnel and provided a wrist band and were directed to an area on the property called the "Atlantis Aquaventure."

52.    After Plaintiff arrived on the premises of the aquapark, there were no guides or supervision or instruction whatsoever from Disney or the Atlantis Resort personnel.

## THE INTERACTIVE RED HEART SWING

53.    During the "Atlantis Aquaventure (N25)," among other amenities, Plaintiff visited Atlantis' latest art installation - an interactive heart sculpture and swing - which was inspired by the renowned Bahamian artist and resort Art Consultant, Antonius Roberts.

54.    Although designed to be interactive, and designed for passengers and guests to use as a conventional swing, to not only take photographs, but to create a sense of romance with the heart and symbolize the carefree joys of childhood, the Red Heart Swing was not "state of the art," nor constructed incorporating reasonable standards of safety, not in compliance with playground related safety specifications or playground industry standards, as the seat of the swing was excessively high off the ground, extremely slippery, and lacked any type of playground rubberized base under the swing, rubber mulch, engineered wood fiber (EWF), and/or materials that constitute loose-fill.

55.    The combination of providing the swing in an area where passengers such as the Plaintiff would access the swing wearing wet bathing suits, where the swing seat itself was unusually high off the ground and lacked any non-skid material and lacked an appropriate base, created a dangerous and hazardous condition.

56.    The design and construction of the Red Heart Swing was in wanton disregard for the

safety of the participants in the Atlantis Aquaventure (N25), as it was foreseeable that passengers, such as Plaintiff, would likely access the swing in wet bathing suits and due to the lack of any non-skid paint or material would potentially fall off the swing, and become severely injured, by falling from an unusually high seat onto the hard ground below.

57.    As the Plaintiff and her husband were leaving the Atlantis Aquaventure to meet up for their return to the ship, they stopped at the Red Heart Swing to obtain a photograph, which was one of the intended purposes of the swing.

58.    The Plaintiff accessed the swing and as she made her initial attempt to swing, the combination of the lack of non-skid material or paint on the swing's seat caused the Plaintiff to fall backwards – headfirst- and stuck her head, neck, and upper back - onto the hard and un-cushioned, non-rubberized base of the swing a few feet below.

59.    As a result, the Plaintiff suffered a traumatic cervical injury necessitating a discectomy and fusion of the cervical vertebrae, open reduction of cervical fracture, laminectomies of the cervical spine and installation of a plate, and fixation with screws and installation of rods, as well as a bone allograft and instrumentation at C-3 through C-7.

60.    In the three (3) years preceding the incident, the Atlantis Resort promoted the Red Heart Swing as a photo stop on the property.

61.    Based upon multiple social media and internet posted photographs, the interactive "Red Heart Swing" became a popular photo stop for cruise passengers and Atlantis guests, such as Plaintiff to take a photo in the swing after participating in water related and lazy river activities.

62.    However, the Red Heart Swing base was very hard and unforgiving, lacking any rubberized material or fall protection, and in an apparent effort to reduce this injury risk, the Atlantis Resort made multiple changes to the areas under and near the approaches to the swing by

adding sand under the swing, then Astroturf grass, and placing rubber mats in the area near base, but not directly under the swing.

63.   These attempts by the Atlantis Resort to change the material at the base and near the swing evince that they had knowledge of the dangerous and hazardous condition of the swing, including the materials utilized for a base, and because of this knowledge and the foreseeability of person's using the swing while wearing a wet bathing suit, made efforts to reduce the danger without regard for the industry standards associated with playgrounds or other state of the art methods lessen the risk of severe injury.

64.   Moreover, Disney knew or should have known that the Red Heart Swing was dangerous and hazardous based upon its inspection of the port adventure excursions for determination of whether it was a safe excursion as represented in its website and promotional materials for the "Atlantis Aquaventure (N25).

65.   All conditions precedent for filing and maintaining this action have been fulfilled, waived, or do not apply.

## COUNT I
## MISLEADING ADVERTISING IN VIOLATION OF
## FLORIDA STATUTE § 817.41 AGAINST ALL DEFENDANTS

66.   The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

67.   At all times material hereto, Defendants' promotional material, including Disney's website referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, particularly that:

> a. "Port Adventures" — shore excursions that have been specially selected by Disney Cruise Line—provide you and your family with the very best each destination has to offer."

b.  Disney Cruise Line's Commitment to Safety that "[a]t Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple processes and procedures to uphold <u>high standards of safety</u> at all times, <u>whether at sea or in port.</u>"

c.  That adventures have been specially selected by Disney Cruise Line to provide you and your family with the very best each destination has to offer. . . (and) make the most of your cruise with memorable experiences for everyone in your family in exotic ports of call.

d.  Disney employed multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port.

e.  That the Disney Atlantis Aquaventure (N25) conducted regular crew training, safety drills and equipment inspections.

f.  That the Atlantis Aquaventure features state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects.

68.   Pursuant to Florida Statute § 817.41(4), the Brookfield Defendants are responsible for the foregoing false and/or misleading advertisements because all Defendants obtained the benefits of the statements and advertisements, which Disney distributed or published from its headquarters in Celebration, Florida, U.S.A.

69.   At all times material hereto, the foregoing statements Disney made, disseminated, and published were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

70.   This knowledge was or should have been acquired through: (a) Disney's initial approval process of the Brookfield Defendants and/or the subject excursion, including, but not limited to, having Disney's representative(s) taking the excursion under the same or similar circumstances as the subject incident; (b) Disney's inspections of the Atlantis Aquaventure (N25), including, but not limited to, conducting site inspections under the same or similar circumstances as the subject incident; and/or (c) prior incidents involving cruise passengers who became injured

while participating in the Atlantis Aquaventure (N25), excursions.

71.    At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing tickets for shore excursions (including the subject excursion).

72.    At all times material hereto, the Plaintiff justifiably relied on Defendants' representations outlined above when Plaintiff purchased a ticket for the subject excursion and decided to participate in the subject excursion.

73.    The Plaintiff's reliance on Defendants' representations was justified considering that Plaintiff is a Florida resident, and Defendants are in the business of promoting and selling shore excursions to thousands of passengers daily from which they earn millions of dollars a year.

74.    As a result, Defendants were in a much stronger position to identify the potential dangers and/or inequities that passengers (like Plaintiff) will encounter when participating in excursions. The Plaintiff therefore justifiably relied on Disney and Brookfield Defendants to accurately advise Plaintiff concerning the dangerous conditions associated with the subject excursion.

75.    The Plaintiff's reliance on Disney's representations was also justified because DISNEY made all arrangements for the subject excursion; Disney marketed the subject excursion using its company logo; Disney recommended its passengers to not engage in excursions, tours and/or activities that are not sold through Disney; and/or Plaintiff's exclusive contacts concerning the subject excursion was with Disney, until the point that Plaintiff actually participated in the subject excursion. Further, had Disney not made the foregoing misrepresentations, the Plaintiff would have made a different decision, such as not participating in the subject excursion.

15

76.     As a direct result of the foregoing, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, emotional distress, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of her injuries, suffered physical handicap, lost earnings, and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.  In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against all Defendants, for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss  of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## COUNT II
## NEGLIGENT MISREPRESNTATION AGAINST DISNEY

77.     The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

78.     Disney markets the subject excursion through its website pre-cruise, and on board during the cruise, where it offers passengers promotional and sales materials, makes onboard announcements, has on-board excursion sales desk and assistants and broadcasts excursions on the cabin television programming, all of which promote, offer, and sell the Atlantis Aquaventure

(N25) port adventure to passengers, including the Plaintiff.

79.    The Disney promotional material, including on its website, advertised its excursions

and the "Atlantis Aquaventure (N25)" as follows:

> Enjoy the water slides, wave pools, aquariums, beaches, and many other attractions of Atlantis Paradise Island. Wet and Wild Fun. Visit the underground aquarium of The Dig, head to the water park thrills of Aquaventure or just enjoy Atlantis' beach.
>
> On this adventure you will…
>
> - Enter the magic of Atlantis' 141-acre treasure: the Aquaventure waterpark. Featuring state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects, Aquaventure is far from your usual water park.
>
> - Continue to one of the resort's many sublime sunbathing spots-on a white-sand beach, in the lagoon and around the pool areas.[14]
>
> - "Port Adventures" — shore excursions that have been specially selected by Disney Cruise Line—provide you and your family with the very best each destination has to offer."
>
> - Disney Cruise Line's Commitment to Safety that "[a]t Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple processes and procedures to uphold <u>high standards of safety</u> at all times, whether at sea or in port."
>
> - That adventures have been specially selected by Disney Cruise Line to provide you and your family with the very best each destination has to offer. . . (and) make the most of your cruise with memorable experiences for everyone in your family in exotic ports of call.
>
> - That Disney employed multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port.
>
> - That the Disney Atlantis Aquaventure (N25) conducted regular crew training, safety drills and equipment inspections.

---

[14] https://disneycruise.disney.go.com/port-adventures/nassau-bahamas-atlantis-aquaventure/#Close

- That the Atlantis Aquaventure features state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects.

80. At all times material hereto, Defendants' promotional material, including Disney's website referenced above, which Plaintiff reviewed, contained misrepresentations of material facts, particularly that:

a. Misrepresenting shore excursions, including "Port Adventures" — shore excursions that have been specially selected by Disney Cruise Line—provide you and your family with the very best each destination has to offer."

b. Misrepresenting Disney Cruise Line's Commitment to Safety that "[a]t Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port."

c. Misrepresenting that port adventures have been specially selected by Disney Cruise Line to provide you and your family with the very best each destination has to offer. . . (and) make the most of your cruise with memorable experiences for everyone in your family in exotic ports of call.

d. Misrepresenting that Disney employed multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port.

e. Misrepresenting that the Disney Atlantis Aquaventure (N25) conducted regular crew training, safety drills and equipment inspections.

f. Misrepresenting that the Atlantis Aquaventure features state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects.

81. Relying upon the website representations provided by Disney concerning the Atlantis Adventure (N25), Plaintiff chose and purchased the "Atlantis Aquaventure (N25)" which included water slides, wave pools, aquariums, a lazy river, beaches, and many other amenities at the Atlantis Paradise Island resort.

82.   On the Disney website, Disney promoted the Atlantis Aquaventure (N25) as "state-of-the-art" and that the port adventure operators are carefully selected.

83.   Plaintiff relied upon the representations made by Disney of the port adventure Atlantis Aquaventure (N25) and offered, marketed, provided, and participated in manning the groups of attendees on the port excursion, purchased from Disney, particularly that the equipment on the Aquaventure would be "state of the art" as described in its promotional and marketing materials.

84.   Based upon the information and representations provided by Disney, the fact that Plaintiff purchased the subject excursion tickets directly from Disney, and in reliance on the representations of DISNEY, believes that the "Port Adventures — shore excursions that have been specially selected by Disney Cruise Line — provide you and your family with the very best each destination has to offer."

85.   Based upon the information and representations provided by Disney, Plaintiff relied upon "Disney Cruise Line's Commitment to Safety" that "[a]t Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple processes and procedures to uphold high standards of safety at all times, whether at sea or in port."

86.   On October 5, 2022, was severely injured during the shore excursion and/or "port adventure" named Atlantis Aquaventure (N25).

87.   At or about 3:00 p.m., local time, on October 5, 2022, Plaintiff sat on the Red Heart Swing, and when she went to "pushed off" to swing, she fell backward directly on her neck resulting in severe excruciating pain.

88.     Plaintiff was placed on a back board and transported to a location on the Atlantis where an ambulance transported her to Princess Margaret Hospital, where she was administered morphine, x-rays, and underwent CT scans.

89.     The next day, she returned to Orlando Florida, where fire rescue transported her to the emergency room at Orlando Health in Ocoee, Fl, where she had additional x-rays and CT scans and an MRI and it was discovered that due to the fall off the Red Heart Swing, she had suffered catastrophic injury, fracturing multiple cervical vertebrae.

90.     Immediately, from Orlando Health, she was airlifted to the Trauma Center at Orlando Regional Medical Center where she underwent an open reduction, internal fixation surgery and placement of a plate in the front of her neck from C3 to C5 and 2 rods in the rear of her neck from C3 to T1.

91.     Upon information and belief, the Brookfield Defendants participated in the construction of the Red Heart Swing when originally designed in 2019 and continued to poorly maintain the swing since constructed in 2019.

92.     Disney knew or should have known that the Red Heart Swing was utilized as a photo stop to take selfies, and other photographs, by passengers with wet bathing suits, and should have been aware that it was not a state-of-the-art swing or base.

93.     At the time of the original construction the base of the Heart Shape Swing, the base was comprised of construction or beach type sand and later a grass or grass material referred to as astroturf.

94.     At the time of Plaintiff's fall, the Brookfield Defendants were on notice that the Red Heart Swing, as originally installed, was constructed with an non-cushion type base material and over the ensuing months and last three (3) years, the Brookfield Defendants made efforts to modify

the base of the swing, attempting to install rubberized mats and astroturf and other materials in an effort to try to minimize the dangers associated with falling from such a high, slippery, swing seat.

95.    The area of the Atlantis Adventure (N25) was poorly maintained and given the nature and type of port adventure offered and provided by or on behalf of the Defendant, was an inherently, known and foreseeably dangerous activity, the liability for which DISNEY cannot delegate, and therefore remains liable to Plaintiff.

96.    As a direct result of the foregoing, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, emotional distress, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of her injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future.  The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.  In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against Defendant, Magical Cruise Company, LTD, d/b/a Disney Cruise Line for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss  of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## COUNT III
## NEGLIGENT SELECTION AND/OR RETENTION AGAINST DISNEY

97.     The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

98.     At all times material hereto, it was Disney's duty to provide Plaintiff with reasonable care under the circumstances.

99.     At all times material hereto, Disney had a duty to select and/or hire competent and/or fit tour excursion operators.

100.   At all times material hereto, as part of its duty to select and/or hire competent and/or fit excursion operators, it was incumbent upon Disney to diligently inquire into the Brookfield Defendants' identity, competency, and fitness, including that of their employees, agents and/or subcontractors.

101.   On or about October 5, 2022, Disney and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances by selecting and/or retaining the Brookfield Defendant(s) and XYZ Defendant(s), which were incompetent and/or unfit based on the following conduct or reasons:

   a. Brookfield Defendants and/or XYZ Defendant(s)'s failed to provide Plaintiff a reasonably safe excursion;

   b. Disney's failure to identify the shore excursion operators, their identities, qualifications and/or competencies;

   c. Defendants' failure to reasonably warn Plaintiff of the dangers she would or could experience while participating in the subject excursion; including that she could become injured participating in the subject excursion;

   d. Defendants did not employ a reasonable number of tour guides to assist or supervise participants and Plaintiff including a reasonable number of guides required to safely deliver adequate instructions to all tour participants, including Plaintiff, as to accessing the Red Heart Swing, during the subject excursion; and/or

22

e.  Defendants' failure to not provide the Plaintiff with an alternate means to safely access the Red Heart Swing.

f.  At all times material hereto, Disney knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Disney, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through: (a) Disney's initial approval process of the subject excursion, including, but not limited to, having Disney's representative(s) take the excursion under the same or similar circumstances as the subject incident, (b) Disney's yearly inspections of the subject excursion, including, but not limited to, conducting site inspections under the repeated attempts by the Brookfield Defendants to remedy the hard substandard base of the Red Heart Swing, (c) Disney's failure to identify that the Red Heart swing was dangerous due to identify that the lack of non-skid material on the seat of the Red Heart Swing.

102.  As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against Defendant, Magical Cruise Company, LTD, d/b/a Disney Cruise Line for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation,

cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN AGAINST DISNEY**

103.   The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

104.   At all times material hereto, Disney had a duty to provide Plaintiff with reasonable care under the circumstances.

105.   At all times material hereto, it was Disney's duty to warn passengers (like Plaintiff) of dangers that were known, or should have been known, to Disney in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

106.   On October 5, 2022, Plaintiff was severely injured during the port adventure Atlantis Aquaventure (N25), while participating in the subject excursion, which Disney invited and reasonably expected Plaintiff to participate in since Disney sold her tickets for the excursion.

107.   On October 5, 2022, Disney and/or its agents, servants, joint venturers and/or employees breached its duty to warn the Plaintiff through the following conduct:

> a.   Failure to adequately warn passengers (including the Plaintiff) of the dangers associated with participating in the subject excursion;
>
> b.   Failure to adequately warn Plaintiff that Disney nor the Brookfield Defendants would not provide her with a state of the art equipment during the excursion;
>
> c.   Failure to adequately warn Plaintiff that Disney nor the Brookfield Defendants would not provide her adequate or safe equipment during the subject excursion;

    d.   Failure to adequately warn Plaintiff that Defendants would not provide her with adequate assistance during the subject excursion.

    e.   Failure to warn of dangers known to Disney, or of which Disney had constructive notice, associated with the Red Heart Swing, as aforementioned, which dangers could not be reasonably appreciated by Plaintiff.

108.   The above conduct directly caused and/or substantially contributed to the cause of Plaintiff's injuries because Plaintiff would not have purchased a ticket for and/or participated in the subject excursion had Disney and/or used the Red Heart Swing.

109.   As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against Defendant, Magical Cruise Company, LTD, d/b/a Disney Cruise Line for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other

relief which the Court deems just or appropriate and demands trial by jury.

**COUNT V**
**GENERAL NEGLIGENCE AGAINST DISNEY**

110. The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

111. At all times material hereto, it was Disney's duty to exercise reasonable care under the circumstances.

112. On or about October 5, 2022, Disney and/or its agents, servants, joint venturers and/or employees breached its duty to provide Plaintiff with reasonable or ordinary care under the circumstances, based on the following conduct:

a. Disney failed to provide Plaintiff a reasonably safe excursion;

b. Disney's failure to identify the shore excursion operators, their identities, qualifications and/or competencies;

c. Disney's failure to reasonably warn Plaintiff of the dangers she would or could experience while participating in the subject excursion; including that she could become injured participating in the subject excursion;

d. Disney did not employ a reasonable number of tour guides to assist or supervise participants and Plaintiff including a reasonable number of guides required to safely deliver adequate instructions to all tour participants, including Plaintiff, as to accessing the Red Heart Swing, during the subject excursion; and/or

e. Disney's failure to not provide the Plaintiff with an alternate means to safely access the Red Heart Swing.

f. At all times material hereto, Disney knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that Disney, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through: (a) Disney's initial approval process of the subject excursion, including, but not limited to, having Disney's representative(s) take the excursion under the same or similar circumstances as the subject

26

> incident, (b) Disney's yearly inspections of the subject excursion, including, but not limited to, conducting site inspections under the repeated attempts by the Brookfield Defendants to remedy the hard base of the Red Heart Swing, (c) Disney's failure to identify that the Red Heart swing was dangerous due to identify that the lack of non-skid material on the seat of the Red Heart Swing.

113. All or some of the above conduct by Disney and/or its agents, servants, and/or employees, directly caused and/or contributed to Plaintiffs' injuries while participating in the subject excursion.

114. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against Defendant, Magical Cruise Company, LTD, d/b/a Disney Cruise Line for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other

relief which the Court deems just or appropriate and demands trial by jury.

**COUNT VI**
**NEGLIGENT FAILURE TO WARN AGAINST**
**BROOKFIELD DEFENDANTS AND XYZ DEFENDANTS**

115.  The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

116.  At all times material hereto, the Brookfield Defendants had a duty to provide Plaintiff with a reasonably safe venue under the circumstances.

117.  At all times material hereto, it was Brookfield Defendants' duty to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to Brookfield Defendants in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

118.  On October 5, 2022, was severely injured during the port adventure Atlantis Aquaventure (N25), while participating in the subject excursion, which the Brookfield Defendants invited and reasonably expected Plaintiff to participate during the excursion.

119.  On October 5, 2022, Disney and/or its agents, servants, and/or employees breached its duty to warn the Plaintiff through the following conduct:

> f.   Failure to adequately warn passengers (including the Plaintiff) of the dangers associated with participating in the subject excursion;
>
> g.   Failure to adequately warn Plaintiff that Disney nor the Brookfield Defendants  would not provide her with a state of the art equipment during the excursion;
>
> h.   Failure to adequately warn Plaintiff that Disney nor the Brookfield Defendants  would not provide her adequate or safe equipment during the subject excursion;
>
> i.   Failure to adequately warn Plaintiff that Defendants would not provide her with adequate assistance during the subject excursion.

120. The above conduct directly caused and/or contributed to Plaintiff's injuries because Plaintiff would not have purchased a ticket for and/or participated in the subject excursion had the Brookfield Defendants and/or its/their agents, servants, and/or employees adequately warned and/or communicated the foregoing to the Plaintiff.

121. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against the Brookfield Defendants for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## COUNT VII
## GENERAL NEGLIGENCE AGAINST THE
## BROOKFIELD DEFENDANTS AND XYZ DEFENDANTS

122. The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

123. At all times material hereto, The Brookfield Defendants (and XYZ Defendants) owned and/or operated the subject excursion.

124. At all times material hereto, it was Defendants' duty to provide Plaintiff with reasonable care under the circumstances.

125. On or about October 5, 2022, the Brookfield Defendants and XYZ Defendant(s) and/or their agents, servants, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances, based on the following conduct:

    a.   Failure to provide a reasonably safe excursion;

    b.   Failure to give Plaintiff adequate instruction as to how to utilize the oversized and dangerously high Red Heart Swing;

    c.   Failure to provide the Plaintiff with state-of-the-art equipment for use by DISNEY passengers, including the Plaintiff, including the Red Heart Swing passengers and participants for the subject excursion;

    d.   Failure to provide the Plaintiff with suitable equipment for passengers/participants to utilize during the subject excursion;

    e.   Failure to provide equipment that met basic playground standards;

    f.   Failure to provide the Plaintiff with an safe base for the Red Heart Swing to minimize or eliminate severe fall injuries while utilizing the Red Heart Swing;

    g.   Failure to warn Plaintiff of the dangers she would or could experience while participating in the subject excursion; including that she could become severely injured during the use of the Red Heart Swing;

    h.   Failure to not reasonably warn Plaintiff of the dangers she would or could experience while participating in the subject excursion;

126.   The foregoing acts of negligence of the Brookfield Defendants (and XYZ Defendants) were a direct and proximate cause of Plaintiff's injuries.

127.   As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about her body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against the Brookfield Defendants  and XYZ Defendant(s)  for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss  of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## COUNT VIII
## NEGLIGENT DESIGN BY BROOKFIELD DEFENDANTS

128.  Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs one (1) through sixty-five (65), as though set forth herein.

129.  At all times material hereto, the Brookfield Defendants and XYZ Defendants owed a duty to its passengers, and in particular a duty to Plaintiff, not to permit dangerous conditions to exist in areas where they conducted the "Atlantis Aquaventure (N25)" port excursion, which could harm passengers, such as the Red Heart Swing, as described in the instant Complaint, as well as to design or participate in the design in a reasonably prudent manner and to install reasonable safeguards of known dangers.

130.  At all times material hereto, the Brookfield Defendants and XYZ Defendants participated in the design process of the Red Heart Swing, including the seat, paint, height of the seat, and base of the swing which, upon information and belief, failed to comply with applicable standards, thereby breaching its duty to exercise reasonable care under the circumstances in the design or participation in the design of the subject Red Heart Swing.

131.  Upon information and belief, the Brookfield Defendants participated in creating the unusual and dangerous design and/or dangerous swing seat, and base of the swing, resulting in Plaintiff slipping backwards off the swing, causing her to fall and become seriously injured.

132.  Upon information and belief, the Brookfield Defendants made multiple attempts to modify the base of the Red Heart Swing but failed to install any type of playground rubberized base under the swing, including rubber mulch, engineered wood fiber (EWF), playground sand, pea gravel and other bulk materials that constitute loose-fill material.

133.  The non-conventional and unusually dangerous design and/or condition of the subject swing, the height of the swing, and the hardness of the base, substantially contributed Plaintiff's fall during the Atlantis Aquaventure (N25) excursion.

134.  At all times material hereto, the Brookfield Defendants manufactured, designed, installed, and/or approved of the subject Red Heart Swing, including that the inferior base, which

created a hazard for passengers and to whom they owed a duty, and in particular a duty to Plaintiff, to provide a reasonably safe port adventure excursion.

135. Furthermore, the Brookfield Defendants knew or should have known of these dangerous conditions and the design flaws that made the subject swing and area involved in Plaintiff's incident unreasonably dangerous and were the direct and proximate cause of Plaintiff's injuries.

136. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against the Brookfield Defendants and XYZ Defendants for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## COUNT IX
## BREACH OF NON-DELEGABLE DUTY AGAINST DISNEY

137.     The Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through sixty-five (65), as though fully set forth herein.

138.     Disney contractually offered to provide Plaintiff the subject excursion. In connection with Disney's offer, Disney via its website made representations of fact concerning the subject excursion, as outlined at paragraphs 38 - 46. The Plaintiff accepted that contractual offer in reliance upon Disney's advertisements and factual representations and provided consideration to Disney by purchasing the excursion from Disney.

139.     By making representations, promoting, vouching for, contracting for and profiting from the excursion ticket contract, Disney owed Plaintiff the non-delegable contractual duty to provide them with a reasonably safe excursion. *See, e.g., Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019); *see also Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016).

140.  Disney breached its non-delegable contractual and/or tort duty to provide a reasonably safe excursion by committing one or more of the following acts:

      a.    Misrepresenting the actual activity level and/or activities involved in the subject excursion;

      b.    Mispresenting shore excursions, including the subject excursion, as being DISNEY 's excursions through the use of proprietary language;

      c.    Misrepresenting that the excursion providers are safe, reliable and/or reputable, when in actuality, passengers' comments, complaints or information concerning safety concerns and/or prior incidents are censored, altered and/or deleted on publicly available website(s) operated and/or controlled by Defendants;

141.  Representing that shore excursion providers are insured, when such insurance may not cover claims outside of the providers' area of operation and/or may contain other limitations,

such as the amount and types of claims covered; and/or Representing and/or implying that excursion providers would be subject to personal jurisdiction in the United States and/or subject to United States and/or Florida law by contractually requiring all DISNEY passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions) and/or advertising that its excursion providers are insured.

142. As a direct result of the foregoing dangerous conditions to which Plaintiff was exposed and experienced, Plaintiff was injured about Plaintiff's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, the Plaintiff Elsa J. Alonso-Roth demands Judgment against Defendant, Magical Cruise Company, LTD, d/b/a Disney Cruise Line for damages suffered and costs incurred, as well as for damages Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, aggravation of a pre-existing condition, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money in the future, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post- judgment interest, and for any and all other relief which the Court deems just or appropriate and demands trial by jury.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: September 6, 2023.

Respectfully submitted,

**PHILIP D. PARRISH, P.A.**
*Co-counsel for Plaintiff*
7301 SW 57th Court, Suite 430
Miami, Florida 33143
Tel.: 305-670-5550/Fax 305 670-5552
Email: phil@parrishappeals.com
betty@parrishappeals.com


By: */s/ Philip D. Parrish_____*
Philip D. Parrish
Florida Bar No. 0541877

GARAY LAW
300 Sevilla Avenue, Suite 206
Coral Gables, FL 33134
Tel: (305) 445-4430; Fax (305) 445-4431


By:/s/ Robert L. Parks_____
ROBERT L. PARKS
*Of Counsel*
Florida Bar No. 61436
bob@garaylawfirm.com
GABRIEL GARAY
Florida Bar No. 103303
gabe@garaylawfirm.com
ana@garaylawfirm.com
patricia@garaylawfirm.com

**ROBERT L. GARDANA, P.A.**
*Counsel for Plaintiff*
12350 SW 132 Court, #204
Miami, Florida 33186
PH: 305-358-0000
FAX: 305-358-1680
E-Mail: robert@gardanalaw.com
       staff@gardanlaw.com


By:  */s/ Robert L. Gardana_____*
Robert L. Gardana, Esq.
Florida Bar No. 279668