**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ELSA J. ALONSO-ROTH,

    Plaintiff,

v.                                                                                                   Case No. 6:23-cv-1710-RBD-EJK

MAGICAL CRUISE COMPANY,
LTD.; BROOKFIELD
CORPORATION; BROOKFIELD
PROPERTY PARTNERS, L.P.;
BROOKFIELD HOSPITALITY
PROPERTIES, LLC; and XYZ
DEFENDANTS,

    Defendants.
_____

## ORDER

Before the Court are Defendants' motions to dismiss (Docs. 25, 39) and Plaintiff's motion to amend (Doc. 54). Defendants' motions are due to be granted and Plaintiff's denied.

## BACKGROUND

This case involves a slip-and-fall on a cruise excursion. Plaintiff bought a ticket to sail on Defendant Magical Cruise Company Ltd.'s ("Disney") new ship, the *Disney Wish*. (Doc. 1, ¶¶ 11, 49.) Part of her contract with Disney included a

"*Himalaya* clause"¹ stating that "all protections, benefits, defenses, and exclusions from and limitations of liability in favor of [Disney]" extend to Disney's contractors. (Doc. 41-2, p. 5, ¶ 15.)

Before the cruise, Plaintiff researched shore excursions that Disney sold and operated. (Doc. 1, ¶ 38.) One of these was the Atlantis Aquaventure (N25) excursion ("Excursion"). While the *Wish* was in the Bahamas, Disney brought Plaintiff ashore to the Aquaventure waterpark at the Atlantis Paradise Island Resort. (*See id.* ¶ 45.) Atlantis is owned and operated by Defendants Brookfield Corporation, Brookfield Property Partners, L.P., Brookfield Hospitality Properties, LLC, and XYZ Defendants² ("Brookfield Defendants"). (*Id.* ¶¶ 6, 16.)

Disney said the following about the Excursion on its website:

- "Enter the magic of Atlantis' 141-acre treasure: The Aquaventure waterpark. Featuring state-of-the-art water slides, river rapids, waterfalls, water holes and amazing special effects, Aquaventure is far from your usual waterpark." (*Id.* ¶ 40.)

- "Port Adventures—shore excursions that have been specially selected by [Disney]—provide you and your family with the very best each destination has to offer." (*Id.* ¶ 41.)

- "At Disney Cruise Line, nothing is more important than the well-being of our guests and crew members, and the safe and secure operation of our ships. From regular crew training, safety drills and equipment inspections to the latest navigational technology, we employ multiple

---

¹ A *Himalaya* clause is a contractual provision extending liability limitations to a third-party beneficiary, named for a case involving the steamship *Himalaya*. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 20 n.2 (2004).

² Plaintiff sues "XYZ Defendants" as a placeholder to represent any unknown owner or operator of Atlantis. (Doc. 1, ¶ 6.)

2

>processes and procedures to uphold high standards of safety at all times, whether at sea or in port." (*Id.* ¶ 42.)

Plaintiff says she relied on these representations in buying the Excursion from Disney. (*Id.* ¶¶ 43–44.)

On the day of the Excursion, Disney brought Plaintiff and other participants from the docked ship to Atlantis. (*Id.* ¶ 50.) Once there, Plaintiff says she waited in a long line under the hot sun to be processed by Atlantis personnel. (Doc. 41-1, ¶¶ 6–8.) She was given a document on a tablet titled "Acknowledgment, Agreement, and Release" (Doc. 25-1) that she signed to get an entry wristband. (Doc. 41-1, ¶¶ 9, 11–13.)[3] This document included the following:

>I agree that any claims I may have against the [Brookfield Defendants] resulting from any events occurring in The Bahamas shall be governed by and constructed in accordance with the laws of the Commonwealth of the Bahamas, and further, irrevocably agree to the Supreme Court of The Bahamas as the exclusive venue for any such proceedings whatsoever.

(Doc. 25-1, p. 4.) Plaintiff checked a box saying that she agreed to her electronic signature being used in lieu of a paper signature and that there is no penalty for withdrawing her consent. (*Id.* at 5.) Then, Atlantis personnel checked her in, gave her a wristband, and directed her to Aquaventure. (Doc. 1, ¶ 51.) No staff

---

[3] "A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. 'Undisputed' in this context means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citation omitted). Multiple such documents in this case are central to the motions to dismiss and Plaintiff's responses, and neither party argues the documents' authenticities, so the Court may consider them.

3

accompanied her to Aquaventure. (*Id.* ¶ 52.)

Within Aquaventure was an interactive art installation called the "Red Heart Swing" ("Swing") that guests could ride. (*Id.* ¶ 53.) Plaintiff says the Swing seat was too high off the ground and slippery, and the ground below had no loose-fill to cushion falls. (*Id.* ¶ 54.) As Plaintiff tried to ride the Swing, she slipped and fell backwards, hitting the ground, causing severe spinal injuries. (*Id.* ¶¶ 58, 59.)

So Plaintiff sues: all Defendants for misleading advertising (Count I); Disney for negligent misrepresentation (Count II), negligent selection/retention (Count III), negligent failure to warn (Count IV), general negligence (Count V), and breach of non-delegable duty (Count IX); and the Brookfield Defendants for negligent failure to warn (Count VI), negligence (Count VII), and negligent design (Count VIII). (*Id. passim.*) Disney and the Brookfield Defendants filed separate motions to dismiss (Docs. 25, 39) and Plaintiff responded (Docs. 41, 47). Plaintiff later moved to amend her complaint to substitute Island Hotel Company Ltd. in place of the XYZ Defendants (Doc. 54), and Defendants oppose (Doc. 57). The matters are ripe.

## STANDARDS

A plaintiff must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, a court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845

(11th Cir. 2004). The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept the factual allegations as true and construe them "in the light most favorable" to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

## ANALYSIS

### I. Brookfield's Motion to Dismiss

First, the Brookfield Defendants argue that Plaintiff agreed to pursue her claims in the Bahamas. (Doc. 25, p. 2; *see* Doc. 25-1, p. 4.) Plaintiff counters that the Himalaya clause binds the Brookfield Defendants to suit in Florida. (Doc. 41, p. 2.) The Court agrees with Brookfield.

A forum selection clause is presumptively valid unless "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Feggestad v. Kerzner Int'l Bah. Ltd.*, 843 F.3d 915, 918 (11th Cir. 2016) (cleaned up). For factor 1, courts consider the "reasonable communicativeness" of the clause, examining both the clause's physical attributes—like form of presentation, font and type size, and obviousness—and whether the plaintiff had the ability to become meaningfully informed of the clause and to reject its terms. *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281

(11th Cir. 2009). If a valid forum selection clause exists, the court then applies a modified forum non conveniens analysis to decide whether enforcement of the clause promotes the interest of justice. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013). The court only considers public interest factors; neither the plaintiff's choice of forum nor the parties' private interests carry weight. *See id.* at 64. Valid forum selection clauses should control in all but the most exceptional cases. *See id.*

The forum selection clause is presumed valid. *See Feggestad*, 843 F.3d at 918. Plaintiff only argues factor 1—fraud or overreaching—and does not dispute the clause's physical characteristics, so the Court need only apply the "reasonable communicativeness" test to see if she could become meaningfully informed of the clause and reject its terms. *See Krenkel*, 579 F.3d at 1281. She could, as she signed an electronic waiver with the clause that was fully available to her, and she does not argue that the clause was obscured. (Doc. 25-1); *cf. Feggestad*, 843 F.3d at 919 (forum selection clause was reasonably communicated where plaintiffs were not "prevented from reading the terms and conditions"). At best, she implies that she was not given a meaningful opportunity to review the clause because she was in the hot sun and felt she had to sign quickly (Doc. 41-1, ¶¶ 6–13), but her haste is irrelevant. *See Feggestad*, 843 F.3d at 919 (plain assertion without factual allegations that personnel impeded plaintiff's review of forum selection clause is insufficient).

So, the forum selection clause is valid, and the Court needs to look only at the public interest factors. Plaintiff does not argue that "public-interest factors overwhelmingly disfavor a transfer." *See Atl. Marine*, 571 U.S. at 67. So the forum selection clause controls. Plaintiff must sue the Brookfield Defendants in the Bahamas.[4]

As for Plaintiff's counterargument (Doc. 41, p. 3), Himalaya clauses are for the beneficiary's use, not the contracting party's. *See, e.g.*, *Mazda Motors of Am., Inc. v. M/V COUGAR ACE*, 565 F.3d 573, 577–78 (9th Cir. 2009) ("The defendant vessel is [] *entitled* to invoke the forum selection clause." (emphasis added)); *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 338 (S.D.N.Y. 2018) (Himalaya clause did not bind third-party beneficiary to forum selection clause). And contracting parties cannot impute obligations onto third-party beneficiaries without their consent. *Cf. Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016). Here, Disney's Himalaya clause was for the Brookfield Defendants to invoke, not Plaintiff. (Doc. 41-2, p. 5, ¶ 15.) So that clause has no application and cannot bind the Brookfield Defendants to suit here.

## II.   Plaintiff's Motion to Amend

---

[4] The merits of Plaintiff's claims against the Brookfield Defendants will be for the Bahamian courts to decide.

Plaintiff moves to substitute Island Hotel Company, Ltd. for the fictitious XYZ Defendants. (Doc. 54.) Because the Brookfield Defendants, including the XYZ Defendants, must be sued in the Bahamas, this amendment would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed . . . ."). So Plaintiff's motion to amend her complaint is due to be denied.

### III.     Disney's Motion to Dismiss

Disney moves to dismiss Counts I, II, III, IV, V, and IX for failure to state a claim. (Doc. 39, p. 2.) The Court addresses each in turn. As a threshold issue, and as both parties acknowledge in their filings (*see id.*, *passim*; *see* Doc. 47, *passim*), federal maritime law governs Plaintiff's claims because she alleges torts occurring at offshore locations during her cruise. *See, e.g., Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004).

#### A.     Counts I and II – Misleading Advertising & Negligent Misrepresentation

Disney first argues that Plaintiff fails to meet the heightened pleading standard for Counts I and II and that Disney's online statements are unactionable puffery. (Doc. 39, pp. 3–4.) The Court agrees.

Claims for misleading advertising under Florida Statutes § 817.41 and for common law negligent misrepresentation are governed by the same legal standard. *See, e.g., Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1264 (S.D. Fla.

8

2020). The elements of these claims are:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Id.* (cleaned up). While specific misrepresentations about excursions are actionable, general promises of a safe excursion are unactionable puffery. *Compare Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-Civ, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019) (statements that cruise company "works with reputable and insured tour operators" unactionable), *with Blow v. Carnival Corp.*, No. 22-22587-Civ, 2023 WL 3686840, at *6 (S.D. Fla. May 26, 2023) (representations that excursion was "safe" and "easy" and that cruise line would "look out for you" actionable). Both claims sound in fraud and so are subject to the Rule 9(b) pleading standard, that is, the who what when and where of the fraud. *See Adams*, 482 F. Supp. 3d at 1264; *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1223 (11th Cir. 2012) (plaintiff must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them" (cleaned up)).

On its face, the Complaint falls short of the Rule 9(b) pleading standard because Plaintiff does not allege the specific circumstances of Disney's alleged

fraud with any particularity. *See Matheny*, 671 F.3d at 1223. Plaintiff needs to give more information. Plaintiff focuses on statements on Disney's website and in its promotional material that the Excursion featured "state-of-the-art" slides and that Disney generally upholds "high standards of safety." (*See* Doc. 1, ¶¶ 67, 79.) These statements are unactionable puffery. *See Zhang*, 2019 WL 8895223, at *6. While specific misrepresentations about an excursion being "safe" can give rise to her claims, that is not what Plaintiff claims. *See Blow*, 2023 WL 3686840, at *6; *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1367 (S.D. Fla. 2019). At best, Plaintiff implies that Disney might have inspected Aquaventure—but not that Disney said this. (*See, e.g.*, Doc. 1, ¶ 101(f).) If Disney did say this, then Plaintiff must allege it.

So Counts I and II are due to be dismissed without prejudice. On repleader, Plaintiff must allege facts with particularity and "better tie[] her factual claims to her legal claims." *See Serra-Cruz*, 400 F. Supp. 3d at 1370.

### B.   Count III – Negligent Selection/Retention

Disney next argues that Count III should be dismissed because Plaintiff alleges no facts about how Disney knew or should have known of the Excursion operator's unfitness. (Doc. 39, pp. 6–11.) The Court agrees.

Negligent selection and negligent retention are two distinct claims with the same elements: (1) the incompetence or unfitness of the contractor; (2) the defendant's knowledge of the contractor's incompetence or unfitness; and (3) the

contractor's incompetence or unfitness proximately caused the plaintiff's injuries. *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 796 (11th Cir. 2017); *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1205 (S.D. Fla. 2020). The difference between them is the relevant timeframe for element 2—negligent selection requires knowledge of a contractor's unfitness pre-hire, while negligent retention requires that same knowledge during the contractor's employment. *See Woodley*, 472 F. Supp. 3d at 1205. So a complaint must allege facts showing how the defendant knew or should have known about the contractor's unfitness and when. *See id.*; *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1335 (S.D. Fla. 2019); *Ferretti v. NCL (Bahs.) Ltd.*, No. 17-cv-20202, 2018 WL 1449201, at *4 (S.D. Fla. Mar. 22, 2018); *Zhang*, 2019 WL 8895223, at *4.

Plaintiff pleads no facts about how Disney would have known about the Brookfield Defendants' unfitness. At best, she offers conclusory allegations that Disney knew or should have known of the dangerous Swing conditions with no underlying facts. (*See* Doc. 1, ¶ 101(f).) And, as she alleges no timeframe for Disney's knowledge of this unfitness, the Court cannot tell whether the claim is properly framed as negligent selection or retention. *See Woodley*, 472 F. Supp. 3d at 1205 ("temporally ambiguous" claim was insufficiently pled). So Count III is due to be dismissed without prejudice.[5]

---

[5] Separately, Count III is due to be dismissed as a shotgun pleading because it lumps two

11

### C. Count IV – Negligent Failure to Warn

Disney next argues that Plaintiff does not allege notice as required for negligent failure to warn. (Doc. 39, pp. 11–15.) The Court agrees.

"In analyzing a maritime tort case, [the Eleventh Circuit relies] on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (cleaned up). The elements of negligence are: (1) duty; (2) breach; (3) proximate cause; and (4) damages. *Id.* A cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit. *See Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985); *see also Chaparro*, 693 F.3d at 1336 (noting *Carlisle* is "consistent with the federal maritime standard" of ordinary reasonable care under the circumstances). So a required element of a negligent failure to warn claim is actual or constructive notice of a risk-creating condition. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *see also Wolf*, 683 F. App'x at 794.

Plaintiff never alleges that Disney had notice of the Swing; she only asserts that Disney conducts inspections of some kind. (*See* Doc. 1, ¶¶ 39, 42, 64.) The only possible allegation of notice is that Disney *might have* inspected Aquaventure

---

causes of action into one count. *Cf. Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). On repleader, Plaintiff must separate these two claims into different counts.

yearly or at least *should* have. (*See id.* ¶ 101(f).) But Plaintiff does not say which inspection, if any, or any other fact, placed Disney on notice of a risk-creating condition— which is fatal to her claim. *See, e.g.*, *Nichols v. Carnival Corp.*, No. 1:19-cv-20836, 2019 WL 11556754, at *7 (S.D. Fla. June 21, 2019) (notice insufficiently pled where plaintiff failed to articulate what facts gave defendant actual or constructive notice); *Serra-Cruz v. Carnival Corp.*, No. 1:18-cv-23033, 2019 WL 13190647, at *8 (S.D. Fla. Feb. 12, 2019). So Count IV is due to be dismissed without prejudice.

### D. Count V – General Negligence

Disney next argues that Count V seeks to impose nonexistent heightened duties. (Doc. 39, pp. 15–17.) The elements of negligence and standard of care in a maritime case are listed above. *See Chaparro*, 693 F.3d at 1336; *see also Carlisle*, 475 So. 2d at 251. As with Count IV, Plaintiff alleges no specific facts that Disney knew or should have known of the dangerous Swing. *See Keefe*, 867 F.2d at 1318. So Count V is due to be dismissed without prejudice for the same reasons.

### E. Count IX – Breach of Non-Delegable Duty

Finally, Disney argues that it did not explicitly guarantee Plaintiff a safe excursion. (Doc. 39, pp. 17–19.) Plaintiff responds that she can sue for breach of an oral contract under a theory of non-delegable duty—here, the duty to provide her with a reasonably safe excursion. (Doc. 47, pp. 16–19; *see* Doc. 1, ¶ 139.) "[W]here

an excursion contract, entered into by a shipowner and a passenger, is alleged to include some sort of guarantee or assurance, a duty may be sufficiently alleged." *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302, 1309 (S.D. Fla. 2019). Oral assurances suffice. *See, e.g., id.* (oral assurances that excursion was "safe, insured, reputable, and reliable" were actionable); *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1146 (S.D. Fla. 2016) (oral assurances that excursion was handicap-accessible were actionable). But while Plaintiff says that Disney "[made] representations, promot[ed] [and] vouch[ed] for" the excursion (Doc. 1, ¶ 139), she again does not say what those representations were. So Count IX is due to be dismissed without prejudice.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendants' motions to dismiss (Docs. 25, 39) are **GRANTED**.

2. Plaintiff's motion for leave to amend her complaint (Doc. 54) is **DENIED**.

3. The Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. By **Monday, June 24, 2024**, Plaintiff may file an amended complaint against Disney. Failure to timely file will result in this action being closed without further notice.

4. The Clerk is **DIRECTED** to terminate the Brookfield Defendants as

parties.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 10, 2024.



ROY B. DALTON, JR.
United States District Judge